UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

RENA GARCIA,                              §
                                          §
          Plaintiff,                      §
VS.                                       §        CIVIL ACTION NO. C-10-300
                                          §
CORPUS CHRISTI INDEPENDENT                §
SCHOOL DISTRICT,                          §
                                          §
          Defendant.                      §

## ORDER

Pending before the Court is Defendant City of Corpus Christi Independent School District's Motion for Summary Judgment.  (D.E. 16.)   For the reasons stated herein, Defendant's motion is DENIED IN PART and GRANTED IN PART, as detailed below.

**I.      Jurisdiction**

The court has federal question jurisdiction over the plaintiff's case under 28 U.S.C. § 1331 as Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, et seq.

**II      Background**

Plaintiff Rene Garcia was formerly employed by Defendant Corpus Christi Independent School District ("CCISD") as a special education teacher at CCISD's Tom Browne Middle School in a program called Student Achievement in Inclusion Learning (the "SAIL" program). (D.E. 16, Ex. A (Garcia Depo.) at 22-33).   Garcia began her employment at Tom Brown in January 2007.   (D.E. 17-8 (Garcia Affidavit) at 1.)   As a public school teacher, she was

employed under a continuing contract as provided by Chapter 21 of the Texas Education Code. (D.E. 16, Ex. B.)[1]

As a teacher in the SAIL program, Garcia was responsible for assisting special education students with social skills, adjusting to campus rules, and adjusting to class expectations so that the students could successfully transition into mainstream classes.  (D.E. 16, Ex. A (Garcia Depo.) at 24-25).   Many of the children Garcia taught in the SAIL program had severe behavioral problems and needed to be taught to "behave socially in an acceptable manner so that they could be integrated into the mainstream[.]"  (Id. at 25.)  Garcia had never previously been a full-time teacher of behaviorally challenged students, and initially found the transition difficult. (D.E. 17-8 (Garcia Affidavit) at 1.)

When she began in the SAIL program, Garcia was assisted by two younger, experienced paraprofessionals, who helped her discipline and manage her students.  (D.E. 16, Ex. A (Garcia Depo.). at 45-46.)   In 2008, one of the two paraprofessionals working with Garcia was reassigned, and the other was transferred to another position.  Garcia was provided a new paraprofessional on a temporary basis for the remainder of the school year.  At the beginning of the next school year, CCISD provided a substitute paraprofessional until October 10, 2008, when the District hired a new full-time paraprofessional, Jose Fernandez.  (Id. at 47-49.)

Initially, the principal at Tom Browne Middle School, Donna Adams, was supportive of Garcia, (D.E. 17-8 (Garcia Affidavit) at 1), and gave her good teacher evaluations for the 2007-2008 school year. (D.E. 17-3 (Recommendation of Hearing Examiner Linda Flores Resendez) at

---

[1] Chapter 21 of the Texas Education Code mandates that public school teachers be employed under one of three types of contract: (1) continuing, (2) term, or (3) probationary. Tex. Educ. Code Ann. §§ 21.151-21.160 (West 2006). Relevant to this case, a continuing contract runs from year to year until the teacher resigns, retires, is released, or is terminated for "good cause." Id. § 21.154. Good cause is defined as "the failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts in this state." Id. § 21.156(a).

8, ¶ 22 (referencing Adams' evaluation dated April 28, 2008)).  However, at some point during the 2007-2008 school year, Adams began to express concern with Garcia's job performance. (D.E. 14, Ex. C (Adams Affidavit) at 2).

On March 7, 2008, Adams issued Garcia a letter of reprimand, itemizing a number of concerns with her performance.  (Id. at 3.)  Adams contends that Garcia was insubordinate and continually failed to comply with Adams' directives.  Among her various complaints are that Garcia placed a special education student in regular classes even though Adams had ordered her to develop a "transition plan" for the student first, (id. at 2-3); that Garcia let a special education student roam the halls unattended; and that Garcia failed to plan and prepare curriculum materials.  (Id. at Adams-1.)  Adams advised Garcia that any further failure to comply with her directives could result in further disciplinary action, up to and including termination.  (Id. at 3.)

Garcia's problems with Principal Adams came to a head in October 2008 when Adams became aware of Garcia's efforts to discipline one of her students.  (Id. at 3.)  On October 14, 2008, she asked Garcia's new paraprofessional Fernandez how things were going.  Mr. Fernandez told her that on his first day as Garcia's paraprofessional he witnessed Garcia put her foot on the back of a rowdy child who was lying on the floor and step into him.  (Id.; D.E. 16, Ex. D (Statement of Jose Fernandez.))

Adams, concerned about this report, had the incident investigated by the CCISD administration and by Child Protective Services ("CPS").  (D.E. 16, Ex. C (Adams Affidavit) at 3.)  She also wrote a letter to CCISD's Superintendent Scott Elliff recommending that Garcia's continuing contract be terminated. (Id. at Adams-3.)  Elliff agreed with Adams' recommendation and proposed the termination of Garcia's contract to CCISD's Board of Trustees.  (D.E. 16, Ex. E (Notice of Proposed Termination dated February 23, 2009) at 1).

On February 23, 2009, Garcia was advised of the proposed termination and notified of her right to a hearing before a Hearing Examiner appointed by the Texas Education Agency. (Id.)  Garcia requested a hearing, and she and CCISD proceeded to an adversarial hearing before a certified Hearing Examiner, Linda Flores Resendez, on May 13 and 14, 2009.  (D.E. 16, Ex. F (Recommendation of Hearing Examiner Linda Flores Resendez)).

After hearing the evidence, the Hearing Examiner concluded that Garcia's "acts of misconduct [were] not serious or significant enough to justify discharge."  (Id. at 19.)  With respect to CCISD's primary complaint about Garcia's use of physical force on her student, the examiner noted that CPS had conducted an investigation into the use of force and found that there had been no physical abuse.  (D.E. 16, Ex. F at 11.)  In addition, she noted that this particular student was frequently rowdy and that his own mother, who believed Garcia to be a "good advocate" for her son, (id. at 11), attested that he "often requires physical contact."  (Id. at 10.)  Indeed, "[s]ince Garcia left," the examiner stated, "[the student's] behavior ha[d] gotten worse" and "he was suspended from the Tom Browne Middle School."  (Id. at 11.)  Accordingly, the Hearing Examiner found that CCISD had failed to establish by a preponderance of the evidence "good cause" for the discharge of Garcia.  (Id. at 20.)  The Hearing Examiner prohibited the district from terminating Garcia's contract.  (Id.)

CCISD's Board of Trustees reviewed the record of the hearing conducted by the Hearing Examiner and heard oral argument.  (D.E. 16, Ex. G (Transcript of Consideration of Appeal Hearing dated July 13, 2009)). At oral argument, counsel for CCISD contended that, in making the recommendation to retain Garcia, the examiner had focused primarily on the allegation of use of inappropriate physical force and had "failed to note that there were two days worth of testimony in which the use of inappropriate physical force was only one of the reasons that was

enumerated in the Board's letter of discharge." (Id. at 8.)  These additional reasons included: making false statements, failing to maintain student records and documents, failing to provide documents and records upon request, failing to develop individual education plans, and failing to follow SAIL program guidelines for students.  (D.E. 16, Ex. I (CCSID Board of Trustees' Decision Regarding Recommendation of the Hearing Examiner) at 3.)

The Board ultimately decided to alter the Hearing Examiner's ruling, finding there was good cause for termination, and subsequently moved to terminate Garcia's contract on July 27, 2009.  (D.E. 16, Exh. H (Minutes of Meeting of CCISD's Board of Trustees held on July 27, 2009) at ¶19; Ex. I (Board of Trustees' Decision Regarding Recommendation of the Hearing Examiner) at 30.)   Garcia appealed the Board's decision to the Commissioner of Education. (D.E. 16, Ex. A (Garcia Depo.) at 77.)

On October 5, 2009, the Commissioner granted Garcia's appeal and reversed the Board's decision.  (D.E. 17-3 (Decision of the Commissioner) at 2-3.)  Like the Hearing Examiner, the Commissioner found that there was not good cause to fire Garcia, stating that the only allegation that could be considered "good cause *per se*" was Garcia's allegedly inappropriate use of force against a student and that the hearing examiner had determined that Garcia did not use inappropriate physical force.  (Id.)

The Commissioner ordered either that Garcia be reinstated or that the Board "buy out" Garcia's contract by paying her one year's salary from the date she would have been reinstated, as allowed under the Texas Education Code.[2]  (Id. at 5).  On October 19, 2009, the Board chose

---

[2] In the event that the Commissioner of Education reverses the decision of a board of trustees with respect to the termination of a teacher's contract, "the [C]ommissioner shall order the school district to reinstate the teacher and to pay the teacher any back pay and employment benefits from the time of discharge or suspension to reinstatement." Tex. Educ. Code § 21.304(e) (West 2006). However, section 21.304(f) provides that "[i]nstead of reinstating a teacher . . . the school district may pay the teacher one year's salary to which the teacher would have been entitled from the date on which the teacher would have been reinstated." Id. § 21.304(f).

to "buy out" Garcia's contract in lieu of reinstatement.  (D.E. 16, Ex. J (Minutes of Meeting of CCISD's Board of Trustees held on October 19, 2009.))

Unable to agree as to the correct amount of the buy out, CCISD and Garcia entered into a compromise agreement entitling Garcia to $72,364.02, less applicable taxes.  (D.E. 16, Ex. L (Agreement Concerning the Texas Commissioner of Education Ruling of Case No. 74-R2-0809)).  On February 26, 2010, CCISD's administration paid Garcia a check for $53,225.43.  (D.E. 16, Ex. L.)

On December 30, 2009, Garcia filed a charge of discrimination with the EEOC complaining of age discrimination and retaliation. (D.E. 16, Ex. K (EEOC Charge of Discrimination filed by Rena B. Garcia on December 30, 2009).  She then timely filed a complaint with this Court on September 15, 2010, bringing the following causes of action: (1) gender discrimination and retaliation under Title VII 42 U.S.C. Section 2000, et seq., (2) age discrimination and retaliation under the ADEA, 29 U.S.C. §621, et seq., and (3) breach of contract.  (D.E. 1 at 4-5.)

Defendant has moved for summary judgment on all of Plaintiff's claims. (D.E. 16.) Plaintiff has timely responded.  (D.E. 17.)

## III.   Discussion

### A.      Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies

which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247.  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Summary judgment

is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B.    Age Discrimination Claim

Plaintiff's primary claim is that CCISD has discriminated against her on the basis of her age in violation of the ADEA.  (D.E. 1 at 5; D.E. 16, Ex. A (Garcia Depo.) at 44, 52.)

### 1.    Prima Facie Case

"In order to recover under the ADEA, the plaintiff must first prove a prima facie case of age discrimination. To do so, the plaintiff must present evidence to show that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and either (4)(a) he was replaced by someone outside the protected class, or (b) he was replaced by someone younger, or (c) he was otherwise discharged because of his age." Fields v. J.C. Penney Co., Inc., 968 F.2d 533, 536 (5th Cir. 1992) (citing Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1504-05 (5th Cir.1988)).

There is no dispute in this case that Plaintiff has made out a prima facie case for age discrimination.  Garcia was discharged when CCISD moved to terminate her contract and, following the Commissioner's decision in her favor, decided to "buy out" her contract rather than reinstate her on October 19, 2009.  (D.E. 16, Ex. J (Minutes of Meeting of CCISD's Board of Trustees held on October 19, 2009.)  Defendant does not argue that Garcia was not qualified to be a special education teacher in Tom Browne Middle School's SAIL program.  Indeed, according to teacher evaluations, her performance in many domains "exceeded expectations" for the 2007-2008 school year. (D.E. 17-3 (Recommendation of Hearing Examiner Linda Flores Resendez) at 8, ¶ 22 (referencing Adams' evaluation dated April 28, 2008)).   Garcia is over 40

years of age: she was around 55 years old during the events in question.  (D.E. 16, Ex. A (Garcia Depo.) at 50, 124).  After the Board let Garcia go, she was replaced by Katherine O'Neal, who was "well under" the age of 40 at the time she was hired.  (Id. at 125.)

Plaintiff has met her burden to establish a prima facie case for age discrimination. Fields, 968 F.2d at 536.

### 2.   Legitimate Nondiscriminatory Reasons

If a plaintiff makes a prima facie showing of age discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).  The employer's burden is only one of production, not persuasion, and involves no credibility assessment. Id.

Under this standard, Defendant has met its burden to produce a legitimate nondiscriminatory reason for terminating Garcia.  Id.  According to CCISD, the district had various legitimate non-discriminatory reasons for its decision: "Garcia's persistent insubordination, failure to properly perform her duties, and inappropriate use of physical force in an effort to discipline a special education student."  (D.E. 16 at 10.)

### 3.   Pretext

"[I]f the employer carries its burden [to provide legitimate non-discriminatory reasons for its decision], the 'mandatory inference of discrimination' created by the plaintiff's prima facie case, 'drops out of the picture' and the fact finder must 'decide the ultimate question: whether [the] plaintiff has proven [intentional discrimination.]'"  Russell, 235 F.3d at 222 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).) "[T]he burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason,

while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir.2004)).

The Court finds on summary judgment that Plaintiff has met her burden to raise a genuine issue of material fact as to whether CCSID's proffered reasons for terminating her are not true, but are merely pretext for age discrimination. See id.; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Plaintiff has also succeeded, under the "mixed motive framework," in raising a genuine issue of material fact as to whether, even if CCSID's proffered reasons are true, Garcia's age was nonetheless a "motivating factor" behind the district's decision. Alvarado, 492 F.3d at 611.

### a.     Evidence Casting Doubt on the Credibility of CCISD's Proffered Reasons for Terminating Plaintiff

The summary judgment evidence is sufficient to cast doubt on CCISD's proffered reasons for terminating Plaintiff and raises a genuine issue of material fact as to whether these reasons are merely pretext for unlawful discrimination. Reeves, 530 U.S. at 142. As said, CCISD contends it fired Garcia because of her "persistent insubordination, failure to properly perform her duties, and inappropriate use of physical force in an effort to discipline a special education student." (D.E. 16 at 10.) However, there are several pieces of evidence to suggest that the Board's decision was not based solely on these alleged deficiencies in Garcia's performance.

First, as discussed, Garcia received a good teacher evaluation from Principal Adams for the 2007-2008 school year. (D.E. 17-3 (Recommendation of Hearing Examiner Linda Flores Resendez) at 8, ¶ 22 (referencing Adams' evaluation dated April 28, 2008)).

Second, after performing an investigation of the October 2008 incident, CPS "ruled out" that physical abuse had occurred — meaning that CPS "determined, based on available information, that it is reasonable to conclude that the abuse or neglect has not occurred."  (D.E. 17-2 (Notice of Findings of a CPS Investigation)).

Third, the Hearing Examiner, after reviewing the entire record, found that: Garcia "did not use inappropriate physical force with her student" and that CCISD had "failed to establish by a preponderance of the evidence good cause for the discharge of Rene Garcia under her continuing contract[.]"   (D.E. 17-3 (Recommendation of Hearing Examiner Linda Flores Resendez) at 20.)  The Commissioner of Education also found in Garcia's favor, reversing the Board's decision to alter the Hearing Examiner's findings and to terminate Garcia.  (D.E. 17-3 (Decision of Commissioner) at 2-3) ("The hearing examiner determined that Petitioner did not use inappropriate physical force or a restraint against a student.  This finding is supported by substantial evidence.  Good cause *per se* cannot be established.")

Based on this record, it is clear that reasonable minds could disagree as to whether the Board had legitimate "good cause" to terminate Garcia.  A reasonable fact finder could therefore conclude that CCISD's proffered reasons for firing Plaintiff were untrue and that the true reason for the decision was age discrimination.  See Reeves, 530 U.S. at 147 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.") (quoting St Mary's Honor Center, 509 U.S. at 511.)  Defendant's motion for summary judgment is denied with respect to Plaintiff's age discrimination claim.

**b.      Evidence of Age Discrimination**

Although the Court need not go further to deny Defendant's motion for summary judgment, see Reeves, 530 U.S. at 147; Russell, 235 F.3d at 225, the Court also notes that the record contains some evidence to support Garcia's contention that age discrimination was the true reason for CCISD's decision to fire her, or at least a "motivating factor."  See Alvarado, 492 F.3d at 611.

Garcia contends that Principal Adams and others in the administration at Thomas Brown Middle School believed that, because she was "in [her] 50s," she "could not do the job" and that they consistently discriminated against her due to her age.  (D.E. 16, Ex. A (Garcia Depo.) at 41-42.)[3]  In her deposition testimony, she details two specific incidents to support this allegation.

First, according to Garcia, Principal Adams, who is herself over 50,[4] made comments that led Garcia believe Adams was "determined for [her] to fail" because of her age. (D.E. 16, Ex. A (Garcia Depo.) at 43.)  She states that when she told Adams on one occasion that she was tired, Adams replied: "Well, maybe you should retire."  (Id. at 44.)  Garcia also speculates that one of the reasons Adams decided to remove her younger paraprofessionals was to ensure that Garcia would not be able to handle the more "physical" aspects of her job, including restraining potentially violent students.  (Id. at 44-45.)

Second, Garcia alleges that CCISD chairperson, Monica White (also probably over 40) "many times made comments to [Garcia] that …she couldn't believe [Garcia's] hair was not white because of [her] age."  (Id. at 42.)  Garcia claims that, around November or December of 2007, White questioned whether or not Garcia dyed her hair and, subsequently, around April or

---

[3] Garcia also contends that, at the time she was terminated, at least one other CCISD teacher over the age of forty was reported and interrogated by the CCISD.  (Id. at 13.)

[4] Principal Adams' own membership in the protected class of persons over 40 does not automatically negate an inference that she engaged in age-based discrimination against the older Garcia.  Fields, 968 F.2d at 536, n. 2.

May of 2008, told her: "I can't believe that you don't have more white hair than you have." (Id. at 52.)  White allegedly "would actually touch Garcia's hair, which [Garcia] felt was weird." (Id.)

In the Fifth Circuit, "[i]n order for workplace comments to provide evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." Adcock v. Sunquest Props., 2011 U.S. App. LEXIS 7504, * 5-6 (5th Cir. Apr. 11, 2011) (unpublished) (citing Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002) (quoting Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 400-01 (5th Cir. 2000)).) "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010)

Defendant objects that, under this doctrine, Adams' and White's comments are "nothing more than stray remarks" that, as a matter of law, cannot constitute evidence of age discrimination.  (D.E. 16 at 13-14).  Defendant contends the comments were made too long before Garcia's termination to be proximate in time to the adverse employment decision. (Id. at 15) (citing Ajao v. Bed Bath & Beyond Inc., 265 Fed. Appx. 258, 265 (5th Cir. 2008); Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010).)  Defendant also contends that neither Adams nor White was an individual with the authority to fire Plaintiff, meaning that her remarks cannot be imputed to the district.  (Id. at 14) (citing Coggin v. Longview Indep. Sch. Dist., 289 F.3d 326, 336 (5th Cir. 2002)).

The Court disagrees with respect to both objections.

With respect to causation, the two cases cited by Defendant for the proposition that nine months is "not proximate as a matter of law" are easily distinguishable.[5]  Neither case holds that the lapse of time between Adams' comments and Garcia's termination forecloses a jury's determination that Defendant's proffered reasons for firing Garcia were mere pretext.   As described above, there is additional evidence casting doubt on CCISD's assertion that it fired Plaintiff for the proffered legitimate non-discriminatory reasons, making these comments — regardless of when they were made — relevant to establishing age discrimination by the district. Reeves, 530 U.S. at 147.

Second, as to the Defendant's objection that Principal Adams lacked authority over the employment decision, this also has no merit.  Although "[t]he board of trustees of the [school district] unquestionably is the final policy and decision maker with respect to the hiring school district employees, the determination of cause, and the decision to terminate an employee's term contract[,]" Coggin, 289 F.3d at 336 (citing Tex. Educ. Code Ann. § 21.211(a)), this does not mean that Adams' remarks, or the alleged animus behind them, were irrelevant to the Board's decision to fire Garcia.  Adams was principal of the Thomas Brown Middle School.  She recommended to the Superintendent in February 2009 that Garcia be terminated, thereby setting in motion the Board's decision to terminate Garcia, and she may have had "leverage, or exerted

---

[5] In Ajao, the Fifth Circuit held, *in the context of establishing a prima facie case of retaliation*, that in order for "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" to be sufficient evidence of causality to establish a prima facie case, "the temporal proximity must be 'very close.'" 265 Fed. Appx. at 265 (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).

In Jackson, the Fifth Circuit found that, because an allegedly discriminatory comment was made "almost a year before" the plaintiff's termination, "[t]he comment appears wholly unrelated to [plaintiff's] termination, and **[plaintiff] has not presented any evidence to show otherwise**." 602 F.3d at 380 (emphasis).  The court concluded: "[t]his comment alone, or **in combination with [plaintiff's] uncorroborated denial of any sexual harassment**, is insufficient to establish a genuine issue of material fact as to pretext. There is substantial evidence that Jackson was fired for violation of [defendant's] sexual harassment policy, and [plaintiff's] only contravention of that evidence comes from his own assertions. **Without more**, we simply cannot conclude that there is a triable issue of fact as to whether [defendant] discriminated against Jackson based on age." Id. at 380-381 (emphases added).

influence" over the Board in making its decision.  See Hervey v. Mississippi Dept. of Educ., 404 Fed.Appx. 865, 871 (5th Cir. 2010) (unpublished).  Put another way, the Board may have acted as the principal's "cat's paw" in making its decision. See id. ("'To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [forbidden] animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decision-maker.'") (quoting Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir.2004)).

Based on all the summary judgment evidence, a reasonable fact-finder could determine that Adams' and White's comments were more than "stray remarks" and that they indicate discriminatory animus on the basis of age.  Reeves, 530 U.S. at 147.  A fact-finder could also determine that Principal Adams exercised leverage or exerted influence over the Board, such that her animus, if any, is imputed to the school district.  See Hervey, 404 Fed. Appx. at 871. Plaintiff has succeeded in raising a genuine issue of fact as to whether she was discriminated against on the basis of her age.  Alvarado, 492 F.3d at 611.  At trial, Plaintiff bears the burden to prove that her termination was the result of intentional age discrimination under the framework put forth above.  Reeves, 530 U.S. at 142-143.

### C.     Retaliation Claim

Plaintiff also alleges that CCISD retaliated against her in violation of Title VII and the ADEA.  (D.E. 1 at 4.)

Title VII, 42 U.S.C. § 2000e-3(a), provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees …because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  § 2000e-3(a).

The ADEA, 29 U.S.C. § 623(d), provides, in relevant part, that "[i]t shall be unlawful for an employer to discriminate against any of his employees … because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  § 623(d).

To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002).

Defendant argues that as a matter of law Plaintiff cannot prove the causation element of her retaliation claim because all of the events at the basis of Garcia's complaint — disparate and hostile treatment from her supervisors, reduction in her paraprofessionals staff, the Board's decision to terminate her, and the Board's decision to "buy out" her contract — occurred *before* Garcia filed her charge with the EEOC or otherwise engaged in protected activity.  (D.E. 16 at 19-20.)  The Court agrees.

In assessing whether the causation component of the plaintiff's prima facie case has been satisfied, evidence of the temporal proximity between purported protected activity and the challenged personnel action, as well as the defendant's awareness of the plaintiff's protected activity, are relevant factors that should be considered by the Court. See Clark, 532 U.S. at 273-

74 (requiring "very close" temporal proximity between the time of "an employer's knowledge of protected activity and an adverse employment action").

As explained above, Garcia's problems with Principal Adams began at some point during the 2007-2008 school year and came to a head in October 2008, when she allegedly used inappropriate force on one of her students.  Adams recommended to the Superintendant that Garcia be terminated on January 30, 2009.  (D.E. 16, Ex. C at Adams-3.)[6]  CCISD's Board of Trustees moved to terminate Garcia on July 27, 2009.  (D.E. 16, Ex. I (CCSID Board of Trustees' Decision Regarding Recommendation of the Hearing Examiner) at 3.)  The Board made the decision to buy out Garcia's contract rather than reinstate her on October 19, 2009. (D.E. 16, Ex. J (Minutes of Meeting of CCISD's Board of Trustees held on October 19, 2009) at ¶12) ("[T]he Board of Trustees voted 7-0 for the District to pay continuing contract teacher, Rene Garcia, one-year salary in lieu of reinstatement[.]")

However, Garcia did not file a charge with the EEOC alleging discrimination and retaliation until December 30, 2009, after all of these events occurred.  (D.E. 16, Ex. K.) Therefore, Garcia cannot establish that any of CCISD's allegedly retaliatory acts — including Adams' recommendation as well as the Board's decision to terminate her and buy out her contract — were causally connected to Garcia's decision to engage in protected activity. Accordingly, she fails to establish a prima facie case for retaliation on the basis of her filing a charge of age discrimination with the EEOC. Gee, 289 F.3d at 345.

Plaintiff additionally argues that her retaliation claim is supported by her decision to appeal the CCISD Board's decision to terminate her.  (D.E. 17 at 6.)  As explained, the Commissioner granted Garcia's appeal, reversing the Board's decision, on October 5, 2009.

---

[6] Adams' letter to Superintendant Elliff is dated "January 30, 2008."  Id.  The Court assumes this is error as the letter addresses incidents that occurred in the fall of 2008.

(D.E. 17-3 (Decision of the Commissioner) at 2-3).  Less than two weeks later, on October 19, 2009, the Board chose to buy out Garcia's contract in lieu of reinstating her.  (D.E. 16, Ex. J (Minutes of Meeting of CCISD's Board of Trustees held on October 19, 2009.)  According to Plaintiff, this employment decision was made in retaliation for Garcia's filing of an appeal.

However, regardless of the temporal proximity between Garcia's filing of an appeal with the Commissioner and the Board's decision not to reinstate her, Garcia's action did not constituted "protected activity" under Title VII or the ADEA.  42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  Title VII, 42 U.S.C. § 2000e-3(a), defines "protected activity" as "oppos[ing] any practice made an unlawful employment practice by this subchapter" or "mak[ing] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter."  § 2000e-3(a); see also Ackel v. Nat'l Communs, Inc., 339 F.3d 376, 385 (5th Cir. 2003) (definition of "protected activity" is limited to "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceedings, or hearing under Title VII.")  The ADEA, 29 U.S.C. § 623(d), provides an identical definition of "protected activity."  See § 623(d).

The Fifth Circuit has held that in order for an employee to engage in "opposition to any practice rendered unlawful by Title VII," §2000e-3(a), "[m]agic words are not required, but protected opposition must at least alert an employer to **the employee's reasonable belief that unlawful discrimination is at issue**."  Brown v. UPS, 406 Fed. Appx. 837, 840 (5th Cir. 2010) (unpublished) (emphasis added) (citing, e.g., Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348-49 (5th Cir. 2007); Broderick v. Donaldson, 437 F.3d 1226, 1232, 369 U.S. App. D.C. 374 (D.C. Cir. 2006); Sitar v. Ind. Dep't of Transp., 344 F.3d 720, 727 (7th Cir. 2003); Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1203 (10th Cir. 2008).)

Garcia's appeal of the Board's decision was not protected opposition under the Fifth Circuit's definition because this action did not inform CCISD that her objection to her termination was based on a "reasonable belief that unlawful discrimination [was] at issue."  Id. Rather, Garcia's appeal was based on her belief that CCISD's decision to terminate her was improper because it reversed the Hearing Examiner's finding that "good cause" did not exist to fire her, even though the Hearing Examiner's finding was supported by "substantial evidence." (D.E. 17-3 (Decision of the Commissioner) at 1-2.)

Because Plaintiff has not established a causal link between any "protected activity" and the Defendant's allegedly retaliatory acts, Defendant's motion for summary judgment is granted with respect to Plaintiff's retaliation claim.  Gee, 289 F.3d at 345; Brown, 406 Fed. Appx. at 840.

### D.     Gender Discrimination Claim

In her complaint, Plaintiff also brought a gender discrimination claim.  (D.E. 1 at 4.) However, Plaintiff has conceded she does not make a claim for gender discrimination.  (D.E. 16, Ex. A (Garcia Depo.) at 59, 68.)    Moreover, Plaintiff did not include allegations of gender discrimination in her EEOC charge.  (D.E. 16, Ex. K.)  She did not check the box indicating that Defendant's alleged discrimination was based upon "gender."  (Id.)    Therefore, she failed to exhaust her administrative remedies with respect to any charge of gender discrimination, and the Court cannot consider such a claim.  Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995) (citing Ray v. Freeman, 626 F.2d 439, 442 (5th Cir. 1980), cert. denied, 450 U.S. 997, 101 S. Ct. 1701, 68 L. Ed. 2d 198 (1981)).  The Court grants Defendant's motion for summary judgment with respect to the Plaintiff's gender discrimination claim.  Id.

### E.     Breach of Contract Claim

Plaintiff also brings a claim for breach of contract.  (D.E. 1 at 5.)  Plaintiff alleges that CCISD breached its employment contract with her in violation of the Texas Education Code. She states that the Commissioner of Education's orders overturning the Board's finding of good cause were not fulfilled. (D.E. 17 at 8.)

Under Texas law, the elements for a breach of contract cause of action are:  (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.  See Hussong v. Schwan's Sales Enterprises, 896 S.W.2d 320, 326 (Tex. App.--Houston 1995).

Plaintiff has failed to satisfy the crucial element of breach.  As discussed above, Plaintiff was terminated despite the Hearing Examiner's and the Commissioner of Education's findings that no good cause existed to do so.  However, the Commissioner ordered *either* that Garcia be reinstated or that the Board pay her one year's salary from the date she would have been reinstated.  (D.E. 17-3 (Decision of the Commissioner) at 5).  This is because, under the Texas Education Code, CCISD had a statutory right to buy out Garcia's contract instead of reinstating her after the Commissioner reversed the Board's decision.  See Tex. Educ. Code § 21.304(f).[7] The parties entered a compromise determining that CCISD would pay Garcia $72,364.02, less any applicable withholdings, and that this payment would "fully satisfy the District's obligation under the Order issued by the Texas Commissioner of Education" and would "fully compensate [Garcia] for all amounts due her by the ruling of the Commissioner of Education."[8]  Plaintiff

---

[7] Specifically, the Code states that Defendant could satisfy its obligation under the Code by paying Garcia "one year's salary to which [she] would have been entitled from the date on which [she] would have been reinstated."  § 21.304(f).
[8] The agreement states, in relevant part:

In consideration for Employee's Release below, District shall pay Employee $72,364.02, less any applicable withholdings as required by law, on or before February 22, 2010.  The parties agree that the

signed this contract, indicating her agreement to its terms.   (D.E. 16, Ex. L (Agreement Concerning the Texas Commissioner of Education Ruling of case No. 74-R2-0809) at 2).   On February 26, 2010, CCISD issued Plaintiff a check for $53,225.43.   (D.E. 16, Ex. L (CCISD Payroll Clearing check)).

In sum, Defendant did not breach Plaintiff's employment contract by choosing to pay her instead of reinstating her because, by statute, Defendant was expressly permitted to do so.   See §21.304(f); see also Ryan v. Superior Oil Co., 813 S.W.2d 594, 596 (Tex. App.-Hous. [14 Dist.], 1991) (no breach of contract occurred when employer who did not pay vacation benefits was merely exercising its right under employee's vacation plan to deem that all earned and accrued vacation time had been taken); see also Crestview, Ltd. v. Foremost Ins. Co., 621 S.W.2d 816, 826 (Tex. Civ. App., 1981) ("[Party] is not liable for damages in doing what he has a right to do under the contract, for he can breach no duty in such a case.")   Accordingly, the Court finds as a matter of law that Defendant did not breach Plaintiff's employment contract by choosing to pay her rather than reinstate her.   Hussong, 896 S.W.2d at 326;

To the extent Plaintiff claims CCISD breached her "buy out" or compromise agreement (a.k.a. settlement agreement), she has not yet exhausted her administrative remedies under the Texas Education Code with respect to this breach of contract action.   See Tex. Educ. Code § 7.057.   The Code provides that "a person may appeal in writing to the commissioner if the person is aggrieved by: (1) the school laws of this state; or  (2) actions or decisions of any school district board of trustees that violate: (A) the school laws of this state; or (B) **a provision of a**

---

payment made under this paragraph shall fully satisfy the District's obligation under the Order issued by the Texas Commissioner of Education…and shall fully compensate employee for all amounts due her by the ruling of the Commissioner of Education.

(D.E. 16, Ex. L (Agreement Concerning the Texas Commissioner of Education Ruling of case No. 74-R2-0809) at 1).

**written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee**." § 7.057 (emphasis added).

Until the Commissioner of Education issues a final ruling with respect to a claim for breach of an employment contract, a plaintiff is deemed not to have exhausted her administrative remedies and may not bring an independent breach of contract action.  See O'Neal v. Ector County Independent School Dist., 221 S.W.3d 286, 291 (Tex.App.–Eastland,2006) ("Until the Commissioner issues a final ruling on the pending grievance, [plaintiff teacher] has not exhausted her administrative remedies. This process may not be circumvented with an independent breach of contract action."); Rascon v. Austin I.S.D., 2006 WL 2045733, *5 (W.D.Tex., 2006) ("Texas law requires an aggrieved party to exhaust administrative remedies if the subject matter concerns administration of school laws or the written provisions of an employment contract.") (citing Texas Educ. Agency v. Cypress-Fairbanks Indep. Sch. Dist., 830 S.W.2d 88, 90-91 (Tex.1992); Tex. Educ.Code Ann. § 7.057).

Although there are exceptions to the exhaustion requirement,[9] none is applicable here. The purpose of the compromise agreement between Plaintiff and the school district was to determine the amount due to Plaintiff under her employment contract.  The compromise agreement thus "concerns…the written provisions of an employment contract." Rascon, 2006 WL 2045733 at *5.  The compromise agreement was entered into while Plaintiff was still an employee of Tom Brown Middle School. Compare id. (holding exhaustion requirement did not apply to a teacher's breach of contract claim challenging her settlement agreement when the

---

[9] "Exhaustion of administrative remedies is not necessary if: (1) the aggrieved party will suffer irreparable harm and the administrative agency is unable to provide relief; (2) the claims are for a violation of a constitutional or federal statutory right; (3) the cause of action involves pure questions of law and the facts are not disputed; (4) the Commissioner of Education lacks jurisdiction over the claims; (5) the administrative agency acts without authority; or (6) the claims involve parties acting outside the scope of their employment with the school district." Rascon, 2006 WL 2045733 at * 5 (citing Dotson v. Grand Prarie Indep. School Dist., 161 S.W.3d 289, 291-92 (Tex.App.-Dallas 2005, n.p.h.).)

"settlement agreement was entered into after Plaintiff had terminated her employment with AISD, and to settle Title VII claims.")

The Commissioner of Education has not issued a final ruling regarding any alleged breach of Plaintiff's compromise agreement. Before pursuing a grievance against CCISD arising from and related to a violation of her employment contract, Plaintiff must first appeal the issue to the Commissioner of Education. § 7.057; O'Neal, 221 S.W.3d at 291. The Court therefore grants Defendant's motion for summary judgment with respect to Plaintiff's breach of contract claim.

## IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART. (D.E. 16.) Summary judgment is GRANTED with respect to Plaintiff's retaliation, gender discrimination, and breach of contract claims. Summary judgment is DENIED with respect to Plaintiff's age discrimination claim.

SIGNED and ORDERED this 28th day of July, 2011.

Janis Graham Jack
Senior United States District Judge